UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE NAGY CHAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VAL-CHRIS INVESTMENTS, INC., <br><br> Defendant. | Case No. 3:24-cv-02764-JSC <br><br> **ORDER RE: MOTION FOR PRELIMINARY INJUNCTION** <br><br> Re: Dkt. No. 9 |

Suzanne Nagy Chan and David Chan allege Val-Chris Investments, Inc. ("Val-Chris") violated its agreement with Plaintiffs by obtaining a non-judicial foreclosure of their home, resulting in its sale at auction on April 26, 2024. (Dkt. No. 1.)[1] Plaintiffs move for a preliminary injunction to enjoin Val-Chris from recording the trustee's deed upon sale of Plaintiffs' property. (Dkt. No. 9-1.) Having carefully considered the briefing, and with the benefit of oral argument on June 11, 2024, the Court DENIES Plaintiffs' motion for a preliminary injunction. David Chan has not established standing to seek a preliminary injunction. Susanne Nagy Chan has failed to demonstrate either the likelihood of success on the merits of any of her claims or that she is likely to suffer irreparable harm in the absence of a preliminary injunction.

**BACKGROUND**

**I.    COMPLAINT ALLEGATIONS**

Suzanne Nagy Chan and David Chan live in a residence located at 5 Woodcrest Cr., Hillsborough, CA 94010. (Dkt. No. 1 ¶ 12.) "On or around December 30, 1999, Plaintiffs purchased the Property and obtained a first position mortgage against the property and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

concurrently executed a Deed of Trust as security for the note." (*Id.* ¶ 13.) "On or around January 18, 2023," Suzanne Nagy Chan "entered into a rate and term refinance loan for $500,000.00 with Defendant VAL-CHRIS" and "concurrently executed a Deed of Trust as security for the note." (*Id.* ¶ 14.) The Deed of Trust, dated January 9, 2023, is between Suzanne Nagy Chan "a married woman as her sole and separated property" and Val-Chris. (Dkt. No. 9-2 at 5.) "On or around January 26, 2023, the loan was assigned to the Felton Family Trust. Defendant VAL-CHRIS is the servicer of the loan." (*Id.* ¶ 15.)

"On or around November 8, 2023, a Notice of Default was recorded on the Property." (*Id.* ¶ 16.) The Notice of Default indicates the property "is in foreclosure" because Suzanne Nagy Chan is "$21,090.00" behind on payments. (Dkt. No. 9-2 at 12.) The Notice of Trustee's Sale is dated February 15, 2024, and indicates the house was scheduled to sell at public auction on March 13, 2024. (*Id.* at 16-18.)

The Chans "contacted Defendant VAL-CHRIS to see if the parties could come to a Loan Forbearance Agreement." (*Id.* ¶ 9.) On April 17, 2024, Maria Romo sent the "Forbearance and Settlement Agreement" to David Chan. (Dkt. No. 19-1 at 15.) The email stated "[p]lease sign in front of a notary public and return the originals by 4/19/2023 [sic]. After this date, these documents may become null and void." (*Id.*) The Forbearance Agreement provides:

**AGREEMENT**:

In consideration of the conditions set forth below, Lender shall Instruct its Trustee not to proceed with the Scheduled Publication / Trustee's Sale on the property upon receipt of this document signed, dated and returned with item "A, B, C, D & E shown below until this loan is reinstated in full. ALL PAYMENTS MUST BE PAID IN THE FORM OF A CASHIER'S CHECK OR WIRE. THERE IS A $500.00 FORBEARANCE AGREEMENT CHARGE FOR THIS SERVICE. PLEASE NOTE, THAT THIS AGREEMENT DOES NOT RELEASE YOU FROM THE FORECLOSURE AND IF NOT COMPLIED WITH AS STATED BELOW, PUBLICATION/ AUCTION FOR SALE OF YOUR PROPERTY WILL PROCEED WITHOUT FURTHER NOTICE.

Total amount of Delinquency: $49,692.30 as of April 1, 2024 Statement Attached

A. Borrower is to submit proof of current status of property taxes and fire insurance;
B. Borrower is to submit the amount of $9,000.00 in form of a cashier's check or money order to be applied against the October 1, 2023 payment and partial foreclosure costs of $3,375.00;
C. Payments for the months of May 1, 2024 through April 1, 2025 will be increased to $9,000.00 and the May 1, 2025 monthly payment to $5,787.30;
D. Beginning with the June 1, 2025 payment, your payments will revert back to $5,625.00;
E. All other terms and conditions shall remain the same.

(*Id.* at 4.)

In their motion for a preliminary injunction, Plaintiffs attached a copy of the Forbearance Agreement that was unsigned and not notarized. (Dkt. No. 9-2 at 20-22.) In reply, Plaintiffs attach a declaration from Suzanne Nagy Chan who explains she "signed the Agreement on April 19, 2024" and returned it to Val-Chris. (Dkt. No. 19-1 ¶ 4.) Val-Chris then informed Suzanne Nagy Chan the agreement needed "to be notarized," and then on "April 22, 2024, Maria Romo from Val-Chris's Servicing Department resent the Agreement" so the Chans "could get it signed and notarized." (*Id.* ¶ 4 and at 14 (email from Maria Romo on April 22 with text "Hello," then "Please See").) "On April 26, 2024" Suzanne Nagy Chan "signed the Agreement" and had it notarized. (*Id.* ¶ 5 and 17.) The Chans then sent the notarized document back to Val-Chris on April 26, 2024 at 11:52:46 AM Pacific Time. (*Id.* at 19.)

"[B]efore" Suzanne Nagy Chan could meet the terms of the Forbearance Agreement (e.g., "submit[ting] proof of current status of property taxes and fire insurance" and "submit[ting] the amount of $9,000.00 in form of a cashier's check or money order" (Dkt. No. 19-1 at 4)), "the Property was sold at foreclosure on April 26, 2024." (Dkt. No. 9-2 ¶ 13.) The Trustee's Deed Upon Sale has not yet been recorded, but "can be recorded as soon as June 17, 2024." (Dkt. No. 19-1 ¶ 9.)

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish:" (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit "use[s] a 'sliding scale' approach according to which 'a stronger showing of one element may offset a weaker showing of another.'" *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1231 (9th Cir. 2023) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). However, the likelihood of success on the merits "is a threshold inquiry and is the most important factor." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "Thus, a 'court need not consider the other factors' if a movant fails to show a

1  likelihood of success on the merits." *Id.* (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d
2  848, 856 (9th Cir. 2017)).
3        When evaluating a preliminary injunction motion, the court may consider otherwise
4  inadmissible evidence. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)
5  ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and
6  makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The
7  trial court may give even inadmissible evidence some weight, when to do so serves the purpose of
8  preventing irreparable harm before trial."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355,
9  1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept this hearsay for
10 purposes of deciding whether to issue the preliminary injunction.").

**DISCUSSION**

**II.  DAVID CHAN**

13       Standing "involves two distinct inquiries"—(1) constitutional standing, which asks
14 "whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy' requirement
15 of Article III" of the Constitution; and (2) statutory standing, which asks "whether a statute has
16 conferred 'standing' on that plaintiff." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.
17 2004). "The party invoking federal jurisdiction bears the burden of establishing" the elements of
18 standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

19       Defendant asserts David Chan lacks standing to sue Val-Chris because he "is not the
20 borrower on the Loan nor is he an owner of the property." (Dkt. No. 15 at 12.) Plaintiffs'
21 complaint alleges "Plaintiffs SUZANNE NAGY CHAN and DAVID CHAN ('Plaintiffs') at all
22 relevant times, owned the Property located at 5 Woodcrest Ct., Hillsborough, CA 94010 ('The
23 Property')." (Dkt. No. 1 ¶ 12.) They further allege "Plaintiffs purchased the Property" in 1999.
24 So, Plaintiffs allege David Chan is an owner of the property.

25       However, Plaintiffs' allegations are contradicted by the Deed of Trust Plaintiffs attached to
26 their Preliminary Injunction Motion. The Deed of Trust provides the Trustor of the property is
27 "SUZANNE NAGY CHAN AKA SUZANNE D. NAGY A MARRIED WOMAN AS HER
28 SOLE AND SEPARATED PROPERTY." (Dkt. No. 9-2 at 5.) The Deed of Trust is signed by

4

Suzanne D. Nagy-Chan alone, and does not make any reference to David Chan. (*Id.* at 9.) Similarly, the forbearance agreement only mentions Suzanne Nagy Chan and makes no reference to David Chan. (*Id.* at 20-27.)

Plaintiffs, in their reply, assert David Chan has standing because he is a "necessary party to this action" as he "was authorized by Suzanne Nagy Chan to discuss and negotiate with Val-Chris all matters concerning the Loan" and Mr. Chan "exclusively handled all the email and telephonic communications with Val-Chris concerning the loan on Suzanne Nagy Chan's behalf, including the forbearance proposal." (Dkt. No. 19 at 2.) Federal Rules of Civil Procedure 19 governs the required joinder of parties. However, standing is not dictated by the rules for the joinder of parties under the Federal Rules of Civil Procedure, but rather is a constitutional and statutory requirement.

Plaintiffs have failed to meet their burden of establishing Mr. Chan's standing to bring this case. "Injury in fact is a constitutional [standing] requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, (2016), *as revised* (May 24, 2016). In this case, Plaintiffs have provided no evidence Mr. Chan has any monetary interest in the home or that he was a party to any relevant agreements. Therefore, Plaintiffs have failed to explain how Mr. Chan has suffered, or will suffer, injury in the absence of the preliminary injunction. Moreover, Plaintiffs have failed to provide any explanation for how Mr. Chan possesses statutory standing for the relevant statutes. So, Mr. Chan does not have standing to bring this case and is DISMISSED as a Plaintiff.

**III.   SUZANNE NAGY CHAN**

 **A.   Likelihood of Success on the Merits**

  **1.   Fair Debt Collections Practices Act**

The Fair Debt Collections Practices Act ("FDCPA") prohibits any "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Therefore, a debt collector violates the FDCPA if it makes a "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," but does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person" or "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6). Accordingly, while "third party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, [] those who seek only to collect for themselves loans they originated generally do not." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017).

Suzanne Nagy Chan alleges Val-Chris violated the FDCPA because it "fail[ed] to honor the terms of the Agreement" and sold the property through foreclosure "before [she] could comply with the terms." (Dkt. No. 9-1 at 5.) Specifically, Ms. Nagy Chan alleges violations of 15 U.S.C. § 1692e, which provides requirements for "debt collectors."

Ms. Nagy Chan's FDCPA claim fails because Val-Chris is not a debt collector under the FDCPA. Ms. Nagy Chan alleges she "entered into a rate and term refinance loan for $500,000.00 with Defendant VAL-CHRIS." (Dkt. No. 1 ¶ 14.) The loan was then "assigned to the Felton Family Trust," in January of 2023, though Val-Chris remained the "servicer of the loan." (*Id.* ¶ 15.) Ms. Nagy Chan alleges a Notice of Default was recorded on the property in November of 2023. Because Val-Chris "assumed servicing responsibilities. . . prior to any default," Val-Chris is not a debt collector under the FDCPA. *Jara v. Aurora Loan Servs., LLC*, 633 F. App'x 651 (9th Cir. 2016); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." (citing S. Rep. No. 95–382, 95th Cong., 1st Sess. 3-4, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698 ("Finally, the committee does not intend the definition to cover . . . the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."))); *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011) ("International Realty is

1  exempt from the definition of a 'debt collector' under § 1692a(6)(F)(iii) because it obtained the
2  right to collect De Dios's rent before the debt was contractually overdue and before it triggered
3  applicable contractual conditions or state law governing default."); *Lyons v. Bank of Am., NA*, No.
4  11-01232 CW, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15, 2011) (holding a mortgage
5  servicing company is not a debt collector when the "loan was not in default when it was acquired
6  by" the mortgage servicing company").

7       Moreover, Plaintiff's FDCPA claim also fails because "actions taken to facilitate a non-
8  judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to
9  collect 'debt' as that term is defined by the FDCPA." *Vien-Phuong Thi Ho v. ReconTrust Co.,*
10 *NA*, 858 F.3d 568, 572 (9th Cir. 2017). The FDCPA defines debt as "any obligation . . . of a
11 consumer to pay money." 15 U.S.C. § 1692a(5). Because "[t]he object of a non-judicial
12 foreclosure is to retake and resell the security, not to collect money from the borrower," the
13 actions surrounding that foreclosure sale do not fall under the FDCPA. *Vien-Phuong Thi Ho*, 858
14 F.3d at 571; *see also Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 970 (9th Cir. 2017)
15 ("[W]hile the FDCPA regulates security interest enforcement activity, it does so only through
16 Section 1692f(6). As for the remaining FDCPA provisions, 'debt collection' refers only to the
17 collection of a money debt.").

18      Ms. Nagy Chan, in her reply, asserts "the emails in which Defendant is sending the
19 Agreement to Plaintiffs directly contradicts that assertion" (Dkt. No. 19 at 4), because the end of
20 that email states, "This is an attempt to collect a debt and any information collected may be used
21 to do so." (Dkt. No. 19-1 at 15.) However, while Val-Chris's employee may have indicated she
22 was attempting to collect a debt, that does not mean Val-Chris was admitting it was a debt
23 collector or collecting on a debt for purposes of the FDCPA. The binding Ninth Circuit precedent
24 discussed above holds that it was not.

25      So, Plaintiff has not demonstrated a likelihood of success on the merits of their FDCPA
26 claim.

27      **2.    Breach of Contract**
28      In California, "the elements of a cause of action for breach of contract are (1) the existence

of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Val-Chris asserts Ms. Nagy Chan has failed to demonstrate she entered into an enforceable contract because the Forbearance Agreement "was never signed by" Ms. Nagy Chan and "there are no allegations that [Ms. Nagy Chan] ever returned the document to Val-Chris or complied with the requirements of the Forbearance Proposal." (Dkt. No. 15 at 14.)

At oral argument, Val-Chris asserted no agreement was entered into because Ms. Nagy Chan failed to return a signed and notarized copy of the agreement by the April 19 deadline provided by Ms. Romo in her email sending the first copy of the Forbearance Agreement, and therefore did not meet the offer's required terms for acceptance. But, after that April 19 deadline, Ms. Romo sent a second copy of the Forbearance Agreement to the Chans on April 22—this time without any deadline attached. Because "any new offer communicated prior to a valid acceptance of a previous offer, extinguishes and replaces the prior one," the April 22 communication from Ms. Romo constitutes a second offer. *Distefano v. Hall*, 263 Cal. App. 2d 380, 385 (Ct. App. 1968). Ms. Nagy Chan then accepted the April 22 offer by returning a signed and notarized copy of the agreement on April 26. So, there was a contract formed between the two parties.

While Ms. Nagy Chan has provided evidence of a contract, she fails to demonstrate she performed under the agreement or offer any excuse for her nonperformance. Under the Forbearance Agreement's explicit terms, Val-Chris would stop the scheduled foreclosure sale "upon receipt of" the Forbearance Agreement "signed, dated and returned with item 'A, B, C, D, & E [sic] shown below." (Dkt. No. 9-2 at 20.) Specifically, to prevent the foreclosure from proceeding, Suzanne Nagy Chan was required to: (1) "submit proof of current status of property taxes and fire insurance;" and (2) "submit the amount of $9,000.00 in form of a cashier's check or money order." (*Id.*) The Forbearance Agreement provides if Suzanne Nagy Chan did not comply with those terms, then "PUBLICATION/AUCTION FOR SALE OF YOUR PROPERTY WILL PROCEED WITHOUT FURTHER NOTICE." (*Id.*) Suzanne Nagy Chan's declaration indicates she "entered into a Forbearance Agreement" with Val-Chris but does not state she met the agreement's required terms. (*Id.* at 2.) Instead, she admits the property was sold at foreclosure on

8

April 26, 2024 "before [she] could meet the terms of the agreement." (*Id.*) So, she has failed to demonstrate a likelihood of success on the merits of her breach of contract claim. *See Odinma v. Aurora Loan Servs.*, No. C09-4674 EDL, 2010 WL 1199886, at *4 (N.D. Cal. Mar. 23, 2010) (dismissing breach of contract claim as to a forbearance agreement because "a reading of the forbearance agreement reveals that the lender retained the ability to foreclose if the agreement was not satisfied" and the plaintiffs failed to make the agreement's required payments).

Ms. Nagy Chan argues "[a]t all times, Plaintiff was, and continue to be, ready, willing, and able to perform all conditions required in accordance with the terms of the agreement," and "Plaintiff signaled this intention by executing the Agreement." (Dkt. No. 19 at 6.) Suzanne Nagy Chan had been in default since November 2023. She received notice her home was going to be sold at foreclosure scheduled for March 2024. According to the terms of the proposed Forbearance Agreement, Val-Chris would "instruct its Trustee not to proceed with the Scheduled Publication/Trustee's Sale on the property upon receipt of this document signed, dated, and returned" with the payment of $9,000 and other required documents. (Dkt. No. 19-1 at 4.) The Agreement further provided "THIS AGREEMENT DOES NOT RELEASE YOU FROM THE FORECLOSURE AND IF NOT COMPLIED WITH AS STATED BELOW, PUBLICATION/AUCTION FOR SALE OF YOUR PROPERTY WILL PROCEED WITHOUT FURTHER NOTICE." (*Id.*) Accordingly, under the Agreement's unambiguous terms, Val-Chris was required to instruct its Trustee to delay the scheduled sale only once it received $9,000 from Ms. Chan, among other things. As Ms. Chan has provided no evidence she paid that $9,000, the Agreement did not require Val-Chris to delay the foreclosure. Ms. Chan fails to explain why she was excused from performing her contractual requirements, and therefore is unlikely to succeed on her breach of contract claim.

### 3. Breach of Implied Covenant

Under California law, "[i]mplied in every contract is a covenant of good faith and fair dealing." *Cordoba Corp. v. City of Indus.*, 87 Cal. App. 5th 145, 156 (2023). "The covenant is read into contracts and functions as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express

9

1  covenants) frustrates the other party's rights to the benefits of the contract." *Thrifty Payless, Inc.*
2  *v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (cleaned up). "The
3  covenant also requires each party to do everything the contract presupposes the party will do to
4  accomplish the agreement's purposes." *Id.*

5  However, "an implied covenant of good faith and fair dealing cannot contradict the express
6  terms of a contract." *Alameda Health Sys. v. Alameda Cnty. Employees' Ret. Assn.*, 100 Cal. App.
7  5th 1159, 1190–91 (2024) (quoting *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* 100 Cal.
8  App. 4th 44, 55 (2002)). Here, according to the Agreement's express terms, Val-Chris was only
9  required to delay the trustee's sale *after* it received the signed contract and a $9,000 payment.
10 Because Ms. Chan has provided no evidence she made such a payment before the sale of her
11 home, she is not entitled to the contract's protections according to the contract's express terms.
12 Accordingly, Ms. Chan has not demonstrated a likelihood of success on the merits of her implied
13 covenant of good faith and fair dealing claim.

### 4. Violation of Unfair Business Practices

15 Ms. Nagy Chan alleges Val-Chris's "violations of Federal Law and Common law
16 constitute unfair business practices," under California Business and Professions Code § 17200, *et*
17 *seq.*. (Dkt. No. 1 ¶ 45.) California's Unfair Competition Law ("UCL") proscribes "unfair
18 competition," which it defines as "any unlawful, unfair or fraudulent business act or practice and
19 unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Because"
20 the statute "is written in the disjunctive, it establishes three varieties of unfair competition—acts or
21 practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles*
22 *Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999) (cleaned up).

23 Ms. Nagy Chan appears to rely on the "unlawful" prong of the UCL, as her allegations
24 focus on Defendant's "violations of Federal Law and Common Law." (Dkt. Nos. 1 ¶ 45; 9-1 at 7.)
25 "By proscribing 'any unlawful' business act or practice the UCL 'borrows' rules set out in other
26 laws and makes violations of those rules independently actionable." *Zhang v. Superior Ct.*, 57
27 Cal. 4th 364, 370 (2013) (cleaned up) (quoting *Cel-Tech*, 20 Cal. 4th at 180). "[V]irtually any law
28 or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] . . .

'unlawful' [prong] violation." *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018) (quoting *Paulus v. Bob Lynch Ford, Inc.* 139 Cal. App. 4th 659, 681 (2006)). Because Ms. Chan has not pled any underlying law violations, their UCL claim also is unlikely to succeed.

### B.   Irreparable Harm

Ms. Nagy Chan asserts she has "established that irreparable injury is . . . imminent" in the absence of a preliminary injunction because the "loss of an interest in real property constitutes an irreparable injury." (Dkt. No. 9-1 at 4 (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011)). But, unfortunately, Ms. Nagy Chan has already lost her interest in the property as she admits it was sold at auction on April 26, 2024. (Dkt. No. 9-1 at 3.) And she has failed to demonstrate how her proposed preliminary injunction— delaying recordation of the deed of trust reflecting the sale— will allow her to recover the property and therefore prevent any future additional irreparable harm. "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 440 (2003) (quoting *Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994)). "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Id.* "Absent defects in the foreclosure procedure itself, delivery of the trustee's deed following a foreclosure sale is 'merely a ministerial act.'" *Matson v. S.B.S. Tr. Deed Network*, 46 Cal. App. 5th 33, 40 (2020) (quoting *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 441 (2003)).

None of Ms. Nagy Chan's causes of actions allow for the recission of the sale of the property; indeed, Ms. Nagy Chan admitted at oral argument the new owner of the property is not a party to this lawsuit. Ms. Nagy Chan's reply refers to monetary damages as the appropriate remedy for each cause of action rather than indicating any of her causes of action can result in the return of the property. Accordingly, Ms. Nagy Chan has failed to demonstrate the likelihood of imminent irreparable injury in the absence of a preliminary injunction.

Ms. Nagy Chan surmises "pursuant to Civil Code 2924(m) and Civil Code 1058.5, title does not transfer until a Trustee's Deed Upon Sale can be recorded," so she is "within the statutory period to challenge the foreclosure sale and effect a rescission." (Dkt. Nos. 9-1 at 1-2.) California Civil Code § 2924 has no "m" subsection. There is a California Civil Code § 2924m, which

covers the "finality of sale" of a property. However, Ms. Nagy Chan fails to make any argument as to why under § 2924m the sale of her home is not final or explain how a final sale could be rescinded based on any of her causes of action. Finally, California Civil Code § 1058.5(b) provides for the impact of a recission of a trustee's deed but does not indicate a trustee's deed can be invalidated based on any of Ms. Nagy Chan's pled causes of action. So, Ms. Chan has failed to demonstrate the likelihood of imminent, irreparable harm in the absence of a preliminary injunction.

## CONCLUSION

Because Mr. Chan lacks standing to bring this claim, and because Ms. Nagy Chan has failed to demonstrate either any likelihood of success on the merits or the likelihood of irreparable harm, the Court need not address the remaining preliminary injunction factors and DENIES Plaintiffs' motion for a preliminary injunction.

This Order resolves Dkt. No. 9.

**IT IS SO ORDERED.**

Dated: June 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge